UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| TARYECHIA RODGERS, individually and on behalf of all others similarly situated,<br><br>v.<br><br>NESTLE USA, INC. d/b/a NESTLÉ USA | Case No. _____<br>FLSA Collective Action |

## PLAINTIFF'S ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Like many other companies across the United States, Nestle USA, Inc. d/b/a Nestlé USA's ("Nestlé") timekeeping and payroll systems were affected by the hack of Kronos in 2021.

2. That hack led to problems in timekeeping and payroll throughout Nestlé's organization.

3. As a result, Nestlé's workers who were not exempt from overtime under federal law were not paid for all overtime hours worked and/or were not paid their proper overtime premium on time, if at all, for all overtime hours worked after the onset of the Kronos hack.

4. Taryechia Rodgers is one such Nestlé worker.

5. Nestlé could have easily implemented a system to accurately record time and properly pay non-exempt hourly and salaried employees until issues related to the hack were resolved.

6. But it didn't. Instead, Nestlé pushed the cost of the Kronos hack onto the most economically vulnerable people in its workforce.

7. Nestlé made the economic burden of the Kronos hack fall on front-line workers—average Americans—who rely on the full and timely payment of their wages to make ends meet.

8. After significant delay, Nestlé made payment of some of these outstanding wages. However, portions of these earned wages remain unpaid.

9. Nestlé's failure to pay wages, including proper overtime, for all hours worked violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

10. Rodgers brings this lawsuit to recover these unpaid overtime wages and other damages owed by Nestlé to Rodgers and Nestlé's other non-overtime-exempt workers, who were the ultimate victims of not just the Kronos hack, but Nestlé's decision to make its own non-exempt employees workers bear the economic burden for the hack.

## JURISDICTION & VENUE

11. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Nestlé is headquartered in this District.

## PARTIES

13. **Plaintiff Taryechia Rodgers** is a natural person.

14. Rodgers was, at all relevant times, an employee of Nestlé.

15. Rodgers has worked for Nestlé since September 2021.

16. Rodgers represents a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Collective" is defined as:

> **All current or former non-exempt employees of Nestlé (including its subsidiaries and alter egos), who were who worked in the United**

> **States at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

17. Throughout this Complaint, the FLSA Collective members are also referred to as the "Similarly Situated Workers."

18. **Defendant Nestle USA, Inc. d/b/a Nestlé USA ("Nestlé")** is a foreign corporation.

19. Nestlé is headquartered in this District.

20. Nestlé may be served by service upon its registered agent, **CT Corporation System, 4701 Cox Rd., Ste. 285, Glen Allen, VA 23060-6808**, or by any other method allowed by law.

21. Nestlé's subsidiaries and alter egos include, but are not limited to:

- Carnation
- Coffee-Mate
- Cereal Partners Worldwide
- Dreyer's
- Gerber
- Häagen-Dazs
- Hot Pockets
- Lean Cuisine
- Nesquick
- Nestlé Purina
- Nestlé Health Science
- Nestlé Professional
- Nespresso
- Perrier
- S. Pellegrino
- Stouffer's

22. At all relevant times, Nestlé exerted operational control over its subsidiaries and alter egos.

23. At all relevant times, Nestlé had the authority to set pay practices for workers of its subsidiaries and alter egos.

24. At all relevant times, Nestlé substantially controlled the terms and conditions of employment for workers of its subsidiaries and alter egos.

25. At all relevant times, Nestlé had a common control and management of labor relations regarding employees of its subsidiaries and alter egos.

26. Nestlé employed and/or jointly employed, with its subsidiaries and alter egos, Ramirez and the Similarly Situated Workers.

27. Nestlé and its subsidiaries and alter egos are joint employers for purposes of the FLSA.

28. Throughout this Complaint, Nestlé and its subsidiaries and alter egos are referred to jointly as "Nestlé."

## COVERAGE UNDER THE FLSA

29. At all relevant times, Nestlé was an employer of Rodgers within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

30. At all relevant times, Nestlé was and is an employer of the FLSA Collective Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

31. Nestlé was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

32. During at least the last three years, Nestlé has had gross annual sales in excess of $500,000.

33. Nestlé was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

34. Nestlé employs many workers, including Rodgers, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or

otherwise work on goods or materials that have been moved in or produced for commerce by any person.

36. The goods and materials handled, sold, or otherwise worked on by Rodgers, and other Nestlé employees and that have been moved in interstate commerce include, but are not limited to, food and beverage products, office supplies, computers, and telecommunications equipment.

## FACTS

36. Nestlé is a food and beverage company.

37. Nestlé employs more than 30,000 people in the United States.

38. Many of Nestlé's employees are non-exempt hourly and salaried workers.

39. Since at least 2021, Nestlé has used timekeeping software and hardware operated and maintained by Kronos.

40. On or about December 11, 2021, Kronos was hacked with ransomware.

41. The Kronos hack interfered with the ability of its customers, including Nestlé, to use Kronos's software and hardware to track hours and pay employees.

42. For at least a portion of time following the Kronos hack, Nestlé failed to keep accurate track of the hours that Rodgers and Similarly Situated Workers worked.

43. Instead, Nestlé has used various methods to estimate the number of hours Rodgers and Similarly Situated Workers work in each pay period.

44. For example, Nestlé issued paychecks based on scheduled hours or estimated hours, or simply duplicated paychecks from pay periods prior to the Kronos hack.

45. As a result of Nestlé's failure to accurately track their actual hours worked each week, employees who were non-exempt and worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

46. Many employees were not even paid for all their non-overtime wages for hours worked in certain workweeks.

47. Rodgers is one of the thousands of employees affected by these pay and timekeeping practices.

48. Instead of paying Rodgers for the hours she actually worked (including overtime hours), Nestlé simply paid based on estimates of time or pay, or based upon arbitrary considerations **other than** Rodgers's actual hours worked and regular pay rates, in multiple workweeks.

49. In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other factors allowed under the law.

50. Nestlé knows it has to pay proper overtime premiums to non-exempt hourly and salaried employees.

51. Nestlé knows this because, prior to the Kronos hack, it routinely paid these workers for all overtime hours at the proper overtime rates.

52. Nestlé could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

53. Instead of accurately tracking hours and paying employees their overtime, Nestlé decided to arbitrarily pay these employees, without regard to the overtime hours they worked or the regular rates at which they were supposed to be paid.

54. It was feasible for Nestlé to have its employees and managers report accurate hours so they could be paid the full and correct amounts of money they were owed for the work they did for the company.

55. But Nestlé chose not to do that.

56. In other words, Nestlé pushed the effects of the Kronos hack onto the backs of its most economically vulnerable workers, making sure that it kept the money it owed to those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work they did.

57. Rodgers is just one of the many Nestlé employees who had to shoulder the burden of this decision by Nestlé.

58. Rodgers was a non-exempt hourly employee of Nestlé.

59. Rodgers regularly worked over 40 hours per week for Nestlé.

60. Rodgers's normal, pre-Kronos hack hours are reflected in Nestlé's records.

61. Since the Kronos hack, Nestlé has not paid Rodgers on time, if at all, for her actual hours worked each week.

62. Since the hack took place, Nestlé has not been accurately recording the hours worked by Rodgers and its other workers.

63. Even when Nestlé has issued payment to Rodgers for any overtime, the overtime is not calculated based on Rodgers's regular rates, as required by federal law.

64. Nestlé was aware of the overtime requirements of the FLSA.

65. Nestlé nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Rodgers.

66. Nestlé's failure to pay overtime to these non-exempt workers was, and is, a willful violation of the FLSA.

67. The full overtime wages owed to Rodgers and the Similarly Situated Workers became "unpaid" when the work for Nestlé was done—that is, on Rodgers and the Similarly Situated Workers' regular paydays. *E.g.*, *Martin v. United States*, 117 Fed. Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985), *modified*, 776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

68. At the time Nestlé failed to pay Rodgers and the Similarly Situated Workers in full for their overtime hours by their regular paydays, Nestlé became liable for all prejudgment interest, liquidated damages, penalties, and any other damages owed under federal and California law.

69. In other words, there is no distinction between late payment and nonpayment of wages under federal law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

70. Any payment made by Nestlé to Rodgers or the Similarly Situated Workers that Nestlé may allege represents previously unpaid wages was not supervised by the Department of Labor or any court.

71. The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law. *See*, *e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682,

683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

72. Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to Nestlé's acts and omissions resulting in the unpaid wages in the first place.

73. Rodgers and the Similarly Situtated Workers remain uncompensated for the wages and other damages owed by Nestlé under federal law.

## COLLECTIVE ACTION ALLEGATIONS

74. Rodgers incorporates all other allegations.

75. Numerous individuals were victimized by Nestlé's patterns, practices, and policies, which are in willful violation of the FLSA.

76. Based on her experiences and tenure with Nestlé, Rodgers is aware that Nestlé's illegal practices were imposed on the FLSA Collective.

77. The FLSA Collective members were not paid their full overtime premiums on time, if at all, for all overtime hours worked.

78. These employees are victims of Nestlé's respective unlawful compensation practices and are similarly situated to Rodgers in terms of the pay provisions and employment practices at issue in the collective in this lawsuit.

79. The workers in the FLSA Collective were similarly situated within the meaning of the FLSA.

80. Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to overtime pay.

81. Nestlé's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the FLSA Collective members.

82. The FLSA Collective should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

### Cause of Action—Overtime Violations of the FLSA

83. Rodgers incorporates each other allegation.

84. By failing to pay Rodgers and the FLSA Collective members overtime at 1.5 times their regular rates when the payments were due, Nestlé violated the FLSA. 29 U.S.C. § 207(a).

85. Nestlé owes Rodgers and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

86. Likewise, Nestlé owes Rodgers and the FLSA Collective members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which they worked over 40 hours in the week, but were not paid in full for all hours.

87. Nestlé knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay the FLSA Collective members overtime compensation.

88. Because Nestlé knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Nestlé owes these wages for at least the past three years.

89. Nestlé's failure to pay overtime compensation to these FLSA Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

90. Because Nestlé's decision not to pay overtime was not made in good faith, Nestlé also owes Rodgers and the FLSA Collective members an amount equal to the unpaid overtime wages as liquidated damages.

91. Accordingly, Rodgers and the FLSA Collective members are entitled to their full overtime wages under the FLSA in an amount equal to 1.5x their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

### RELIEF SOUGHT

Rodgers prays for judgment against Nestlé as follows:

    a. For an order certifying a collective action for the FLSA claims;

    b. For an order finding Nestlé liable for violations of federal wage laws with respect to Rodgers and all FLSA Collective members covered by this case;

    c. For a judgment aRodgersing all unpaid wages, liquidated damages, and penalties under federal wage laws to Rodgers and all FLSA Collective members covered by this case;

    d. For a judgment aRodgersing attorneys' fees to Rodgers and all FLSA Collective members covered by this case;

    e. For a judgment aRodgersing costs of this action to Rodgers all FLSA Collective members covered by this case;

    f. For a judgment aRodgersing pre- and post-judgment interest at the highest rates allowed by law to Rodgers and all FLSA Collective members covered by this case; and

    g. For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By:   */s/ Tara Tighe*
    _____
    **Tara Tighe, Esq.**
    Virginia Bar No. 85825
**MORGAN & MORGAN, P.A.**
4250 North Fairfax Drive – Ste. 635
Arlington, VA 22203
Telephone: (571) 357-7598
Email: ttighe@forthepeople.com

**C. Ryan Morgan, Esq.**
Florida Bar No.: 0015527
(*seeking admission pro hac vice*)
**MORGAN & MORGAN, P.A.**
20 N. Orange Ave., 15th Floor
Orlando, Florida 32801
Telephone: (407) 420-1414
Facsimile: (407) 867-4791
Email: rmorgan@forthepeople.com

**Matthew S. Parmet**
TX Bar # 24069719
(*seeking admission pro hac vice*)
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone 713 999 5228
matt@parmet.law

**Attorneys for Plaintiff**